Francisco Eugenio MARTINEZ, Plaintiff-Appellant,

v.

Fred M. WINNER, Chief Judge of the United States District Court for the District of Colorado, individually and in his official capacity; Joseph M. Dolan, United States Attorney for the District of Colorado, individually and in his official capacity; Susan Roberts, Assistant United States Attorney, individually and in her official capacity; John R. Barksdale, Assistant United States Attorney, individually and in his official capacity; Dan Christopher, Assistant United States Attorney, individually and in his official capacity; Jan Chapman, Assistant United States Attorney, individually and in her official capacity; United States Department of Justice, a governmental entity; Federal Bureau of Investigation, a governmental entity; "John Doe" and other unnamed and unknown agents in the Denver Office of the Federal Bureau of Investigation, individually and in their official capacities; Matt Dunn, Deputy United States Marshal, individually and in his official capacity; Peyton Baer, Deputy United States Marshal, individually and in his official capacity; Les Weisenhorn, Deputy United States Marshal, individually and in his official capacity; City and County of Denver, a governmental entity; Dale A. Tooley, District Attorney for the City and County of Denver, individually and in his official capacity; Castelar Garcia, Jr., Deputy District Attorney, individually and in his official capacity; City of Denver Police Department, a governmental entity; Arthur Dill, Chief of Police, individually and in his official capacity; Robert Shaugnessy, Chief, City of Denver Police Department, individually and in his official capacity; Robert Nicoletti, Captain, Denver Police Department, individually and in his official capacity; J.C. Tyus, Detective, Denver Police Department; "John Does," and other unnamed and unknown agents of the Denver Police Depart-

ment; Sandy Spencer and Peter Webb, Defendants-Appellees.

No. 82–2110.

United States Court of Appeals, Tenth Circuit.

Submitted March 28, 1985.

Decided Aug. 22, 1985.

See also D.C., 548 F.Supp. 278.

Adele Graham of Graham & Graham, Denver, Colo., and David Graham of Graham & Graham, San Luis, Colo. (Dan Stormer of Litt & Stormer, Los Angeles, Cal., and James I. Meyerson, New York City, with them on the brief), for plaintiff-appellant.

Gary T. Cornwell of McGuire, Cornwell & Blakey, Denver, Colo., for defendant-appellee Winner.

Mark B. Stern, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Barbara L. Herwig, Dept. of Justice, Washington, D.C., and Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for defendants-appellees Dolan, Roberts, Barksdale, Chapman, Christopher, Dept. of Justice, F.B.I., Dunn, Baer, Weisenhorn.

Daniel J. Sears, Denver, Colo., for defendant-appellee Spencer.

Jeffrey A. Chase of Holme, Roberts & Owen, Denver, Colo. (Carol H. Green of Holme, Roberts & Owen, Denver, Colo., with him on the brief), for defendant-appellee Webb.

David R. Brougham of Hall & Evans, Denver, Colo., for defendants-appellees Tooley and Garcia.

John R. Flanders of Halaby & McCrea, Denver, Colo. (Theodore S. Halaby and Leslie L. Schluter of Halaby & McCrea, Denver, Colo., and Steven M. Munsinger, Keene, Munsinger & Stuckey, Denver, Colo., with him on the brief), for defendants-appellees City and County of Denver, City of Denver Police Dept., Dill, Shaughnessy, Nicoletti and Tyus.

Before LAY, Chief Judge, BRIGHT and ARNOLD, Circuit Judges.[*]

ARNOLD, Circuit Judge.

Francisco Eugenio Martinez, known as "Kiko," appeals from the District Court's dismissal of his civil-rights complaint. Martinez claims the defendants deprived him of his civil and constitutional rights, conspired to "get Kiko," and tried to "railroad" him into prison on unsubstantiated criminal charges. He asserts claims based on 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, the First, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution, unspecified sections of the Constitu-

[*] The Honorable Donald P. Lay, Chief Judge, United States Court of Appeals for the Eighth Circuit, and the Honorable Myron H. Bright and the Honorable Richard S. Arnold, United States Circuit Judges for the Eighth Circuit, sitting by designation.

tion of the State of Colorado, common-law tort actions including false arrest, false imprisonment, malicious abuse of process, harassment, gross misconduct, outrageous conduct, and negligence, and violations of the Code of Judicial Conduct and the Code of Professional Responsibility for lawyers. He seeks damages, an injunction, and declaratory relief. The principal defendant is Fred M. Winner, at all relevant times Chief Judge of the United States District Court for the District of Colorado, who presided over plaintiff's trial in 1981 for mailing a letter bomb.

The District Court held that Judge Winner and the federal prosecutors were entitled to immunity from liability for damages for their acts, and that declaratory and injunctive relief were not available in this case. The judge and the federal prosecutors were dismissed from the case, as no relief could be granted against them. The causes of action under 42 U.S.C. §§ 1981, 1985, 1986, and 1988 were dismissed as either inapplicable or because no claim was stated under them. The claims against the remaining defendants were dismissed under Fed.R.Civ.P. 8(a) and 12(b)(6).[1] Martinez was given 20 days to correct the deficiencies in the complaint, but he chose to stand on the complaint as filed. The dismissal of his complaint was therefore with prejudice.

We hold that Judge Winner is absolutely immune from any claim for damages, and that injunctive and declaratory relief against him would serve no purpose. He has left office. As to the other defendants, we affirm in part and reverse in part.

## I.

Martinez's complaint arises out of criminal actions against him in both state and federal courts for the possession and mailing of three letter bombs. In 1973 the United States Attorney's office for the District of Colorado decided to prosecute Martinez for possession of unregistered explo-

sives and the sending of explosives through the United States mails. Martinez fled the jurisdiction and did not return until 1980, when he was arrested by federal authorities. The charges in the indictment were split; each of three mail-bomb incidents was tried separately. In 1980 the Denver District Attorney's office also charged Martinez with crimes involving bombing attempts. These state charges were later dismissed upon motion of the prosecution.

During the first trial highly improper conduct occurred. The facts are summarized in this Court's decision in *United States v. Martinez*, 667 F.2d 886, 887–88 (10th Cir.1981), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982). In stating the facts we draw also on the complaint, which we must take as true for present purposes. During the middle of the first trial the presiding judge, Judge Winner, held a secret meeting in his hotel room. Present at the meeting were two Assistant United States Attorneys, three Deputy United States Marshals, the Judge's second secretary, who was also a deputy clerk of the District Court, and some witnesses for the prosecution. Neither defendant nor his counsel were notified about this meeting. Judge Winner expressed apprehension that the jury was being intimidated by spectators, and that Martinez might be acquitted. He wanted hidden cameras installed to record the intimidation, which he felt was an obstruction of justice. It was agreed at the meeting that a mistrial would be declared, so as to give the government another chance to convict Martinez before another jury. Judge Winner's thought was that the prosecutors should not move for a mistrial until after the defense had presented its case, so that the government could be informed as to defense strategies. The judge further stated that he could provoke counsel for defendant into requesting a mistrial. One witness, also a defendant here, Officer Tyus of the City of Denver Police Depart-

---

**1.** The causes of action arising under state law were dismissed without prejudice to plaintiff's

right to assert them in the Colorado state courts.

ment, suggested that he could cause a mistrial by giving improper and prejudicial testimony that had previously been ruled inadmissible. The reason given for not inviting defendant's counsel to the meeting was the court's suspicion (unverified on the record) that one of defendant's counsel might be involved in the supposed conspiracy to intimidate the jury.

The next morning, the government announced that it no longer opposed the motion for mistrial that had been made the previous day by defendant and denied. Defense counsel asked why the government had changed its position, and, according to the complaint, an Assistant United States Attorney replied, falsely, that the government was willing to consent to a mistrial because one of the jurors had become ill. The defense then joined in the motion, and a mistrial was declared. Judge Winner and the government had apparently thought it important to induce defense counsel to join in the mistrial motion, so as to avoid a later claim of double jeopardy.

In *United States v. Martinez, supra,* we held that the government's misrepresentation of its grounds for seeking a mistrial and its failure to inform the defense of the hotel-room meeting barred retrial as to the first letter-bomb mailing under the Double Jeopardy Clause. *Id.* at 889–90. Martinez was then tried for a second alleged mailing of a letter bomb, and this time he was acquitted by the jury. The United States then prosecuted him for the third alleged letter-bomb mailing. We held that this prosecution was not barred by the government's apparently negligent destruction of physical evidence, but that the prosecution could not, in the course of the third trial, introduce evidence of the first two alleged bombings as similar crimes or acts. *United States v. Martinez,* 744 F.2d 76, 80 (10th Cir.1984). On remand, the District Court dismissed the third charge on motion of the government, which apparently believed that it lacked sufficient evidence to convict, in view of our holding ruling out evidence of the first two bombings. *United States v. Martinez,* No. 73–CR–414 (D.Colo. Nov. 30, 1984) (order dismissing remaining counts).

We now summarize the remaining allegations of the complaint before us on this appeal. (Additional details will be given as plaintiff's theories against the various defendants are discussed.) Martinez alleges that there was a "get Kiko" conspiracy on the part of state and federal law-enforcement agencies, Judge Winner, and others. Plaintiff, a lawyer, says that he was actively using his legal skills to promote the assertion of rights by Mexicanos and other "oppressed" national minorities, including Native Americans. As a result of these activities, and because he himself was a Mexicano, he alleges that law-enforcement agencies conspired to harass and oppress his political and social activism. He claims they carried out unlawful surveillance and investigations, kept a dossier on him, received and passed on information, and issued malicious and inflammatory press releases. He says that false charges were brought against him, charges known to the prosecution to be false, and that the defendants tried to "railroad" him to jail. The "railroading" charge has particular reference to the hotel-room meeting, the details of which we have already described. As a result of these activities, Martinez alleges that numerous constitutional violations occurred and that many common-law torts were committed against him.

Because this appeal comes to us from a Rule 12(b)(6) dismissal for failure to state a claim, we take the well-pleaded allegations of the complaint as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). And under the liberal pleading rules set out in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (footnote omitted).

II.

Martinez's complaint seeks to allege many claims against many defendants.

The clearest way to describe these claims and our disposition of them, we think, is to take each of the defendants or groups of defendants in turn. We will begin with Judge Winner, because the question of his judicial immunity seems to be the most important issue in the case, or, at any rate, the issue on which the plaintiff-appellant spends most of the pages of his brief.

In *Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978), the Supreme Court stated that a judge is entitled to judicial immunity if he has not acted in clear absence of all jurisdiction and if the act was a judicial one. An act is judicial if it is a function normally performed by a judge and the parties dealt with the judge in his judicial capacity. *Id.* at 362, 98 S.Ct. at 1107. A judge is entitled to immunity even if he acted with partiality, maliciously, or corruptly. *Bradley v. Fisher,* 13 Wall. 335, 348, 20 L.Ed. 646 (1871).

Many of Martinez's arguments against the judge are based on the theory that the acts were ministerial or administrative and therefore nonjudicial. However, an act may be administrative or ministerial for some purposes and still be a "judicial" act for purposes of immunity from liability for damages. *Rheuark v. Shaw,* 628 F.2d 297, 304-05 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). Each act must be examined to determine if it was a function normally performed by a judge and if the parties were dealing with the judge in his judicial capacity. No question is raised in this case regarding Judge Winner's jurisdiction.

The complaint states that Judge Winner assigned himself, in contravention of local practice and rules, to preside at the Martinez criminal trial, for the purpose of insuring a conviction. Cases filed in federal district courts are to be divided among the judges as provided by the rules and orders of the court. The chief judge is responsible for the observance of such rules and orders and assigns the cases when the rules and orders make no provision. 28 U.S.C. § 137 (1982). Martinez does not dispute that Judge Winner, as chief judge, had the responsibility to insure that the rules are followed, but he argues that this is an administrative duty, usually handled by deputy clerks. Although it is an "administrative" act, in the sense that it does not concern the decision who shall win a case, the assignment of cases is still a judicial function in the sense that it directly concerns the case-deciding process, and by statute it is the responsibility of the chief judge, Judge Winner in this case. It was within the expectation of the parties that the chief judge would be responsible for the assignment of cases. That Judge Winner may have acted improperly in assigning a case to himself is irrelevant to the issue of judicial immunity. The assignment of a case to himself was a judicial act for which Judge Winner is entitled to judicial immunity.

Martinez next argues that Judge Winner created a tense courtroom atmosphere for the purpose of causing jury hostility to him. He alleges that Judge Winner assigned deputy marshals who were prejudiced against Martinez, appointed more security personnel than necessary, required inspection of items brought into the courtroom, and required personal searches. Martinez argues that courtroom security arrangements are an administrative act, and thus that Judge Winner is not entitled to absolute immunity. On the contrary, it is the judge's responsibility to exercise control over the courtroom and take security precautions during a trial. In *Sheppard v. Maxwell,* 384 U.S. 333, 358, 86 S.Ct. 1507, 1519, 16 L.Ed.2d 600 (1966), the Court stated: "The carnival atmosphere at trial could easily have been avoided since the courtroom and courthouse premises are subject to the control of the court." It is a judge's duty to order some type of precaution if he or she believes there might be some sort of trouble. Usually this sort of thing is delegated to the United States Marshal or to court security officers, but the judge remains ultimately responsible, and this responsibility directly concerns his

duty to see that cases are decided in a peaceful and dignified atmosphere.

Judge Winner suggested at the hotel-room meeting that a hidden camera be installed to observe threats which he believed were being made against the jury. Martinez argues that Judge Winner's suggestion was part of a conspiracy to prosecute him, his lawyers, supporters, and spectators for obstruction of justice, and that Judge Winner gathered evidence, directed police and FBI activities, and tried to involve the prosecuting attorneys in his camera "scheme." Suggesting the installation of hidden cameras to observe possible threats to, or intimidation of, the jury falls within a judge's responsibility to maintain order and security in the courtroom. If the judge feels a jury is being intimidated by spectators, it is his responsibility to notify the proper law enforcement agencies and have the possible crime investigated. A judge is not only entitled but also has a duty to take all lawful measures reasonably necessary to prevent the occurrence of a crime in his courtroom. Cases holding judges are not entitled to immunity for the independent investigation of crimes occurring outside their courtrooms are quite different. See *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir.), *cert. denied*, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). Judge Winner is entitled to judicial immunity for these security measures.

A judge who allegedly predetermines a case is still protected by judicial immunity. *Dykes v. Hosemann*, 743 F.2d 1488, 1495 (11th Cir.1984); *Lopez v. Vanderwater*, 620 F.2d at 1234; *but see Rankin v. Howard*, 633 F.2d 844, 847 (9th Cir.1980), *cert. denied*, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981). To hold that a judge who is charged with having made a predetermination of guilt is not entitled to absolute immunity would make ineffective the whole doctrine of judicial immunity. Every dissatisfied loser could sue the judge on this basis. "If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away." *Bradley v. Fisher*, 13 Wall. at 348. Even if Judge Winner made a predetermination that Martinez was guilty, he is still entitled to judicial immunity.

The complaint also states that Judge Winner wrote to the Department of Justice accusing Martinez of being a catalyst for bringing together four terrorist groups, and charging that he was obstructing justice and was involved in bombings and riots. Copies of the letter were then allegedly sent to other members of the federal bench, to defendant Shaughnessy, Chief of the Police Department of the City of Denver, to unspecified others, and to the *Denver Post*, which published portions of the letter. Martinez also alleges Judge Winner granted an interview to defendant Webb, a television reporter, to induce him to publish the same accusations.

There is no question that Judge Winner is entitled to immunity for writing the letter to the Justice Department and sending copies to the other law-enforcement officials. The letter referred to the trial and Judge Winner's belief that the jury had been intimidated. As stated above, Judge Winner had a duty to notify the proper authorities if he felt a crime was being committed in his courtroom. As to sending the letter to the *Denver Post*, the complaint alleges only that the letter was sent, not that the judge sent it. Finally, although it is usually inappropriate for judges to give statements to the press about pending cases, here the statement simply repeated the contents of a letter sent to law-enforcement authorities. If, as we have held, the sending of the letter is itself within the judicial immunity, we do not think that repeating the letter's contents to newspeople is so far nonjudicial as to forfeit that immunity.

Finally, Martinez alleges that Judge Winner received information about him from the FBI and the Denver Police

Department. The complaint does not claim that Judge Winner solicited the information. Moreover, the mere receipt of information violates no law and is simply no basis for any action.

■■■ We conclude that Judge Winner is entitled to absolute judicial immunity from the claims for damages alleged against him in the complaint. As is always the case when a defense of immunity is upheld, some wrongs may go unredressed as a result of this holding. Indeed, we have already held, *United States v. Martinez, supra,* 667 F.2d 886, that the hotel-room meeting and subsequent courtroom proceedings were a gross impropriety. The premise of the doctrine of absolute judicial immunity, however, is that it is more tolerable for a few wrongs to go unredressed than for the judiciary to be continuously harassed by suits brought by disappointed litigants. That most of these cases would probably be dismissed on the merits, either on motion for summary judgment or after trial on the merits, is not a complete answer to the dangers posed by this kind of harassment, for being forced to litigate such matters is a significant personal burden, inevitably distracting the defendant judges from their main duty of deciding cases. The public must look to other remedies, including impeachment and disciplinary proceedings before the judicial council of the circuit involved, for such transgressions. See *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949) (L. Hand, C.J.), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

■■■ The complaint also seeks an injunction and a declaratory judgment against Judge Winner. The Supreme Court has held that judges' absolute immunity does not bar these kinds of relief. *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Here, however, Judge Winner has resigned from office, so the request for injunctive relief against him is moot. As for a declaratory judgment, Martinez has already obtained it, in substance, in the form of our opinion in

*United States v. Martinez, supra.* The District Court's decision to dismiss the complaint in its entirety with prejudice as to Judge Winner will be affirmed.

## III.

We next discuss, as a group, the federal-prosecutor defendants. They are Joseph M. Dolan, United States Attorney for the District of Colorado, and four Assistant United States Attorneys for the same District, Susan Roberts, John R. Barksdale, Dan Christopher, and Jan Chapman. (The official positions given for each of these defendants are those held at the time of the acts alleged in the complaint.) The complaint alleges that these federal defendants, in common with all other defendants, were biased and prejudiced against "Mexicano, American Indian, Black and other national minorities," I R.13–14,[2] and held political and social views in opposition to them and to the assertion of their rights. In or about 1980, it is alleged, the defendant Dolan determined to continue prosecuting the federal indictment that had been returned against Martinez in 1973. This prosecution was based on racial criteria, and its purpose was harassment. I R.16, complaint ¶ 53. Defendants Barksdale and Christopher were present at the hotel-room meeting on January 29, 1981, the third day of the trial for the first alleged letter-bomb mailing. On the next day, January 30, 1981, Judge Winner met with defendant Roberts, Barksdale's and Christopher's supervisor, and renewed his offer to grant a mistrial on demand of the government. I R.23, complaint ¶ 98. On the same day, Barksdale and Christopher, as detailed above, agreed to the motion for mistrial that defendant had unsuccessfully made the day before, and gave a false reason for the change in the government's position. Roberts, Barksdale, and Christopher, after consultation with and on the instructions of Dolan, failed to inform the plaintiff and his attorneys of the hotel-room meeting, apparently for the purpose of depriving Martinez

---

**2.** This reference is to pages 13–14 of Volume 1 of the record.

of a potent argument in support of his claim that retrial would be barred by double jeopardy. I R.22, complaint ¶ 109. And finally, on or about March 17, 1981, defendant Chapman submitted an affidavit concealing and misrepresenting what had happened, all "for the purpose of defeating plaintiff's lawful efforts to claim a mistrial." I R.25, complaint ¶ 127.

The District Court dismissed these allegations. It held that the federal-prosecutor defendants were entitled to absolute prosecutorial immunity from liability for damages, and that injunctive and declaratory relief were not available, primarily because it thought no practical form of injunctive relief could be conceived of. In addition, the District Court believed that many of these allegations failed to state a claim. The declaration of a mistrial simply gave Martinez relief that he and his own lawyers had been consistently seeking throughout the first trial, and this first charge was ultimately dismissed with prejudice on double-jeopardy grounds.

In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court discussed the applicability of prosecutorial immunity to § 1983 actions and reviewed the common-law immunity of prosecutors. The Court noted that the purpose of prosecutorial immunity was to prevent unfounded and harassing litigation that might unduly influence the exercise of independent judgment. *Id.* at 423, 96 S.Ct. at 991. The Court held that a prosecutor's activities intimately associated with the judicial phase of the criminal process were entitled to absolute immunity. The Court reserved judgment "whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31, 96 S.Ct. at 994–95. "We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from civil suit for damages under § 1983." *Id.* at 431, 96 S.Ct. at 995. The same principles apply to actions alleging unconstitutional conduct by federal prosecutors. The main allega-

tions concern the prosecutors' meetings with Judge Winner and the confession of mistrial.

Plotting with the court to declare a mistrial for the government's convenience is a violation of a defendant's right to a fair trial, guaranteed by the Due Process Clause of the Fifth Amendment. However, the meetings with the judge and the confession of mistrial fall within the scope of prosecutorial immunity. See *Kostal v. Stoner*, 292 F.2d 492, 493 (10th Cir. 1961), *cert. denied*, 369 U.S. 868, 82 S.Ct. 1032, 8 L.Ed.2d 87 (1962) (prosecutor allegedly conspired with judge to deprive plaintiff of fair trial), cited in *Imbler*, 424 U.S. at 420 n. 16, 96 S.Ct. at 990 n. 16. Although it was grossly improper, the meeting of the judge and prosecutors to discuss the government's strategy was part of the judicial phase of the criminal process and concerned the presentation of the government's case. Thus, the prosecutors are entitled to immunity for these acts.

The next set of claims against the prosecutors concern allegations that Dolan and his assistants indicted and prosecuted Martinez on charges that they knew or should have known were false. Martinez further argues that the prosecutors failed to make any independent inquiry or investigation regarding the charges but instead relied on information supplied to them by the Denver Police Department and the District Attorney for the City and County of Denver.

The prosecutors are clearly entitled to immunity for initiating the prosecution. *Imbler*, 424 U.S. at 431, 96 S.Ct. at 995. Whether the charges were false and whether the prosecutors knew they were false is irrelevant. The allegation that the prosecutors failed to make an independent investigation also falls within the scope of prosecutorial immunity. See *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir.1979); *Halpern v. City of New Haven*, 489 F.Supp. 841, 843 (D.Conn.1980). Martinez is not arguing that the federal prosecutors committed some specific improper act during the investigation of his case. Rather,

he challenges the basis upon which the prosecutors decided to indict and prosecute him, i.e., that they relied on other law-enforcement agencies' information. A prosecutor's exercise of discretion in deciding whether information is sufficient to support an indictment, and whether its source is credible, concerns the judicial phase of the criminal process. Furthermore, we know of no legal duty which requires the U.S. Attorney's office to make an independent investigation, and Martinez cites no support for his allegation that it is required to do so.

Finally, Martinez alleges that the prosecutors concealed, lied, misrepresented, and refused to reveal the reason for the mistrial and the improper acts of Judge Winner. In particular, Martinez alleges that Christopher and Barksdale gave a false reason when requested by Martinez's counsel to state why they requested a mistrial, that Barksdale, Christopher, and Roberts, at the direction of Dolan, their supervisor, failed to inform Martinez about the hotel-room meeting and what occurred there, and that Chapman submitted a false affidavit, apparently in some sort of bar disciplinary proceeding, concealing and misrepresenting the violation of Martinez's rights and lying about the conspiracy.

 The failure of the prosecutors to disclose that the meeting occurred, although improper, is within the scope of prosecutorial immunity. *Cf. Hilliard v. Williams*, 540 F.2d 220 (6th Cir.1976) (prosecutors entitled to immunity from damages for failure to reveal evidence favorable to defendant). However, lying and submitting a false affidavit after the trial had been concluded are not within the scope of prosecutorial immunity. These acts were not part of the presentation of the government's case nor of the judicial process. They do not involve the role of the prosecutors as advocates. They are instead actions taken for the personal benefit of the prosecutors to cover up their wrongdoings. Although prosecutors are entitled to immunity for wrongs they may commit in the judicial process, in this case, the involvement in the hotel-room meeting and the confession of mistrial, they are not entitled to immunity for action taken to cover up these wrongs in order to avoid any possible personal liability. We hold that the alleged lying and false affidavit are outside the scope of prosecutorial immunity, and that Chapman is not entitled to immunity for these acts.[3] See *Ryland v. Shapiro*, 708 F.2d 967, 975 (5th Cir.1983) (falsifying death certificate and covering up murder are actions outside the role of prosecutors); *Briggs v. Goodwin*, 569 F.2d 10, 13–25 (D.C.Cir.1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (special prosecutor conducting grand jury investigation lied to the court when asked if any informants were among the parties subpoenaed; *held*, that prosecutor was not entitled to quasi-judicial immunity, because he was not acting as an advocate, and because his role at the time was investigative).

 In sum, the prosecutors are entitled to immunity for initiating the prosecution, meeting with the judge, and confessing mistrial, but Chapman is not entitled to prosecutorial immunity for allegedly lying and filing a false affidavit.[4] This immunity, however, extends only to liability for damages. Prosecutors may still be liable for declaratory and injunctive relief. See *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736–37, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980). If we understand the facts correctly, none of the federal-prosecutor defendants is still in office, so injunctive relief against them would have no meaning. The defendant Dolan, however, was sued both individually and in his official capacity, and his successor in office, on motion of plaintiff made in

---

**3.** The complaint, ¶ 127, I R.25, does not allege that any other defendant cooperated in the submission of this false affidavit.

**4.** Whether plaintiff can prove that he was damaged by this affidavit, as distinct from the other wrongs allegedly committed by the federal-prosecutor defendants, is of course a separate question, to be pursued on remand.

the District Court on remand, can be substituted as a party defendant. An injunction could then be entered (assuming plaintiff can prove his case) against the successor United States Attorney in his or her official capacity, the purpose of which would be to control and prevent future prosecutorial acts in violation of Martinez's constitutional rights.[5]

The District Court took the view that the claim for injunctive relief should be dismissed on its face because no possible injunctive relief could be suggested, and because there is no present threat of any proceedings against Martinez, all three letter-bomb prosecutions having now been concluded favorably to him. Either or both of these propositions may ultimately turn out to be well-founded, but we do not think that the difficulties of fashioning relief should result in the dismissal of a complaint at the pleading stage. If a sufficiently strong case is made, for example, an injunction could conceivably be fashioned that would prohibit the United States Attorney from investigating Martinez, or from using certain investigative techniques against him, without previous approval either from a court or from a higher official of the Department of Justice. Whether there is any current real threat that the improper activities complained of will be resumed, again, is an issue best left to factual development on remand. At the oral argument we were informed by counsel for Martinez that four days after the filing of the reply brief in this appeal the government raided his home and charged him with using a false name in order to gain re-entry to the United States in 1980. He has apparently been indicted on this new charge in the District of Arizona. Whether these representations are true we cannot know on the present record, but they have not been contradicted by the government, and we are not sufficiently confident of what the government's future intentions with respect to Martinez might be to dismiss out of hand at this early stage of the case his claim for injunctive relief against the federal prosecutors. In addition, whether or not coercive relief in the form of damages or an injunction is or could be granted, the prosecutor defendants are not immune from declaratory relief, which might serve the important purpose of vindicating plaintiff's constitutional rights. Martinez's claims against the prosecutors extend beyond the mistrial issue, so our earlier opinion in *United States v. Martinez, supra,* 667 F.2d 886, does not fully meet the need for declaratory relief.

It remains to discuss whether the allegations of the complaint against the federal-prosecutor defendants state a claim. So far, we have held, with respect to most of these allegations, that the federal-prosecutor defendants are immune from claims for damages. We have also held that the immunity does not extend to injunctive or declaratory relief, and that these kinds of relief, depending on the facts developed on remand, may be available. The question whether the complaint states a claim under any of the constitutional provisions and statutes pleaded must also be discussed, because, if it does not, dismissal of the complaint must be affirmed without regard to our conclusion on any of the issues of immunity.

We believe that several of the statutes and constitutional provisions pleaded in the complaint are applicable. First, we address the alleged claim under 42 U.S.C. § 1981. Reading the complaint as a whole, we conclude that it sufficiently alleges that Martinez was falsely arrested, prosecuted on unfounded charges, and denied a fair trial because of his race and national origin. Thus, he alleges that he has been denied the "full and equal benefit of all

---

5. The other four federal-prosecutor defendants, Roberts, Barksdale, Christopher, and Chapman, were also sued both individually and in their official capacities, but no purpose would be served by substituting in their place any current Assistant United States Attorney for the District of Colorado. Any injunctive relief to which Martinez is entitled will be fully effective if directed against the current United States Attorney, who of course controls and supervises all of the Assistants.

laws and proceedings for the security of persons and property as is enjoyed by white citizens," and that he has been subjected to pains, punishments, and exactions greater than those imposed on white citizens, in violation of § 1981. It should be recalled, in this connection, that the complaint alleges, I R.11, ¶ 2, that each of the defendants, including the federal-prosecutor defendants, violated the plaintiff's rights in part because of his race and national origin.

■ In addition, the complaint seeks to allege claims under 42 U.S.C. § 1985(3) (conspiracy to deprive any person or class of persons of equal protection). The District Court interpreted the complaint as alleging two conspiracies, a hidden-camera conspiracy and a "railroading" conspiracy, which involved the government's concession that a mistrial should be granted. It dismissed the § 1985(3) claim because Martinez failed to allege any facts in support of his theory that the conspiracy was motivated by racial discrimination, and because Martinez failed to allege that any other constitutional rights (in addition to the right to be free of racial discrimination) had been violated. We believe the District Court interpreted the conspiracy allegations of the complaint too narrowly, and that the hidden-camera and railroading claims were part of a larger conspiracy allegation. The complaint alleges that the defendants conspired against the plaintiff because he was Mexicano and was active in political and social activities in support of various minorities. This conspiracy allegation starts with the illegal surveillance and false charges and continues through the hotel-room meeting and confession of mistrial. So read, the complaint sufficiently alleges that plaintiff was harassed and oppressed in order to intimidate him from exercising his First Amendment rights of freedom of speech and expression, and that this harassment was based on at least two factors: racial antipathy and opposition to plaintiff's political and social opinions. This is a sufficient allegation of conspiracy under § 1985(3).

■ We are mindful of the holding of *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971), that § 1985(3) is not a general federal tort law, but requires that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct. at 1798. Martinez is a member of a racial and national minority and clearly alleges that he has been conspired against because of his race, political and social beliefs, and activities on behalf of his own and other minorities. Because he is not alleging a purely politically motivated conspiracy, but also alleges that the defendants were motivated by racial discrimination, he avoids the issue left open by the Supreme Court in *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 3359–60, 77 L.Ed.2d 1049 (1983), as to whether § 1985(3) covers wholly non-racial, politically motivated conspiracies.

■ To be sure, a claim of conspiracy under § 1985(3) requires a deprivation of some right or privilege created by the Constitution or other provisions of federal law. "The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere...." 103 S.Ct. at 3358. Martinez has amply met this requirement. He alleges that his freedoms of speech and association and his right to a fair trial have been infringed for reasons of racial bias. Even without the allegation of racial bias, the complaint would sufficiently state a claim for violations of the First and Fifth Amendments, but the addition of the claim of racial bias brings into play § 1985(3) as well.

■ The District Court took the view that because the prosecutions against Martinez ultimately came to nothing, he has no cause of action. A mistrial was declared in the first letter-bomb case, but Martinez himself had previously moved for a mistrial, so he actually got the very relief he had sought. We believe this approach is too narrow. Martinez alleges that he has been subjected to an unfounded prosecu-

tion, and that, because of a conspiracy to subvert the processes of justice, a conspiracy engaged in both by the trial court and by the government, he was subjected to the threat of a new prosecution. That the new prosecution ultimately failed does not mean that Martinez's rights were not violated. It means only that the damage he has suffered is not so great as it would be if he had also been unjustly convicted, as well as being subjected to an unjustly managed criminal process.

■ In addition, defendants argue that no one is immune from investigation on criminal charges, and that it is the duty of the authorities to maintain surveillance of those suspected of crime. All this is true enough, but it misses the point of the complaint's allegations. If, for example, the police and prosecutors decided to go to every meeting of Methodists, take photographs and recordings, and otherwise maintain surveillance, in order to determine if the Methodists were plotting some kind of crime, and at the same time determined to avoid any such activities with respect to Baptists, no one could deny that the Methodists' constitutional rights were being infringed, and this would be true whether or not particular Methodists were actually committing crimes. Every citizen has a right to be free from investigation and prosecution because of his religious or political beliefs or race.

■ So here, the charge made by the complaint is that the defendants conducted surveillance of Martinez and his associates and prosecuted them because of racial prejudice against them, and because of disagreement with their political opinions. In our country, these cannot be sufficient bases for official action. The deprivation of these constitutional rights, if it can be proved, would entitle Martinez to nom-

inal damages, if to no other form of relief. See *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978). "By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed...." *Id.* at 266, 98 S.Ct. at 1053. *Carey* involved a § 1983 claim, but the same reasoning applies to claims under § 1985(3) and the Constitution itself.[6]

■ Martinez has also pleaded a claim under 42 U.S.C. § 1986. Under this statute, any person who has knowledge of a § 1985 conspiracy and has the power to prevent or aid in preventing the commission of the conspiracy, and does not, may be liable to the party injured. Since we hold, with respect to the federal-prosecutor defendants, that Martinez's § 1985(3) conspiracy cause of action is viable, his § 1986 action also becomes viable, and it should not have been dismissed. The same is true of the § 1983 claim. Federal officials ordinarily are not suable under § 1983, which requires action under color of state law, but they may be liable under § 1983 where, as here, they are charged with conspiring with state officers or employees.

In sum, we hold that all of the federal-prosecutor defendants, except the defendant Chapman, are entitled to absolute immunity from claims for damages. As to the claim for declaratory and injunctive relief, the dismissal of the complaint is reversed. The complaint states legally sufficient causes of action under §§ 1981, 1983, 1985(3), and 1986, and under the First Amendment and the Due Process Clause of the Fifth Amendment. The District Court's dismissal of the claim against the federal-prosecutor defendants under § 1985(2), clause 1, is affirmed.[7]

**6.** The District Court also dismissed Martinez's conspiracy claim under § 1985(2). The first clause of this section concerns obstruction of justice in the federal courts. See *Kush v. Rutledge,* 460 U.S. 719, 724–25, 103 S.Ct. 1483, 1486–87, 75 L.Ed.2d 413 (1983). Martinez does not allege intimidation of a party, witness, or juror in a federal court, and therefore the Dis-

trict Court was correct, so far as the federal-prosecutor defendants are concerned, in dismissing his claim under § 1985(2), clause 1.

**7.** We also affirm, as to all defendants, dismissal of the claims under the Fourth, Sixth, Eighth, Ninth, and Thirteenth Amendments. These provisions are either clearly inapposite, or else add

## IV.

We next address the claims against federal defendants other than the judge and the prosecutors. First, the Department of Justice was properly dismissed as a named defendant, if for no other reason, because it is not a juridical entity separate from the United States or the individual officers and employees who direct and work for it. The same is true of the Federal Bureau of Investigation as a named defendant. The United States itself could have been named as a defendant, but it has not waived its sovereign immunity for constitutional torts as such. *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir.1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Birnbaum v. United States*, 588 F.2d 319, 327–28 (2d Cir. 1978). As noted by Justice Harlan in a concurring opinion, "[h]owever desirable a direct remedy against the government might be as a substitute for individual official liability, the sovereign still remains immune to suit." *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 410, 91 S.Ct. 1999, 2012, 29 L.Ed.2d 619 (1971). The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2679(a), is available as a remedy for certain torts committed by the United States, but plaintiff did not seek to plead a claim under this statute, nor can he do so now, because he has not preserved his rights by filing an administrative claim within the time limit provided.

The complaint does, however, name as defendants "John Doe and other unnamed and unknown agents in the Denver office of the Federal Bureau of Investigation." Plaintiff asserts that at the time he filed his complaint he was unable to name the agents that he believed had violated his rights. Discovery, it is said, could develop these persons' names. The complaint alleges that FBI personnel were involved in illegal surveillance of Martinez and in installing or attempting to install a wire-tap in the office of one of his lawyers. In the context of the complaint read as a whole, which alleges that all defendants were motivated by racial bias and by opposition to plaintiff's political and social opinions, we believe this allegation would state a claim if individual defendants could be named. As we have explained previously, police surveillance and other investigative techniques lawful in and of themselves become unlawful if employed against a particular race or nationality for reasons of bias and prejudice, or if employed with specific intent to suppress certain unpopular political opinions. On remand, after a reasonable period of time for discovery, plaintiff should be given an opportunity to amend his complaint to name the particular FBI agents who he believes have violated his rights.

Also named as defendants are three Deputy United States Marshals, Matt Dunn, Peyton Baer, and Les Weisenhorn. Even when read with the proper degree of indulgence, the complaint fails to state a claim against them. The factual allegations concerning the Marshals are simply that they were present at the hotel-room meeting, carried out certain unspecified improper and unconstitutional orders given by Judge Winner, and acted as "go-betweens" among certain defendants. The Marshals can hardly be faulted for attending a meeting at the direction of the presiding judge, nor could they have had any substantive role to play in the making or execution of the agreement between the Court and counsel for the government with respect to the declaration of a mistrial. The same is true, only more so, of the defendant Sandy Spencer, Judge Winner's second secretary, who is also a Deputy Clerk of the District Court. In fact, the only thing she actually did, so far as the complaint alleges, was to come to the hotel-room meeting at Judge Winner's direction. As to this group of defendants, the complaint is long on invective but short on fact, and we conclude that its allegations are simply too indefinite to state a claim. This holding makes it unnecessary to consider

nothing of substance to the theories that we have held are adequately pleaded.

what kind of immunity, whether absolute or qualified, persons acting under the direction of a judge might enjoy.

In short, we agree with the District Court that the complaint failed to state a claim as against this group of nonprosecutor federal defendants, except for the unnamed agents of the FBI, as to whom further proceedings will be open on remand.

## V.

■■■■■ A number of state and local governmental entities and officials are also named defendants. First among these are Dale A. Tooley, at the time District Attorney for the City and County of Denver, and Castelar Garcia, Jr., Deputy District Attorney. The complaint alleges that these two state prosecutors instituted a prosecution against Martinez in the state courts that they knew to be unfounded, that was "based upon racial criteria," I R.16, complaint ¶ 44, and that "was for the purpose of harassment...." *Ibid.* Mr. Tooley has died, and plaintiff has not requested that the cause be revived against his estate or personal representative, so the complaint must be dismissed as to him in any event. As to Garcia, he is immune from liability for damages as a prosecutor for the reasons we have given in part III of this opinion with respect to the federal-prosecutor defendants. He is no longer in office, so injunctive relief against him would have no meaning, and, in any event, as will shortly be seen, the City and County of Denver will remain as a defendant, and injunctive relief entered against them (assuming the proof justifies it) would be fully effective to protect plaintiff's rights. The same is true of declaratory relief: a declaratory judgment entered against the City and County of Denver, a judgment that would necessarily include a recitation of the acts of Tooley and Garcia, would fully vindicate plaintiff's rights. Declaratory relief is in some sense discretionary. It need not be entered against an individual if no real purpose would be served. We con-

clude that the complaint was properly dismissed as to Messrs. Tooley and Garcia.

■■■■ The complaint also names as defendants Arthur Dill, "presently [at the time of the filing of the complaint] Chief of Police" of the City of Denver Police Department, I R.13, complaint ¶ 20, and Robert Shaughnessy, "presently a Chief" in the City of Denver Police Department, I R.13, complaint ¶ 19. During the pendency of this appeal, Mr. Shaughnessy died, and Dill has retired as Chief. Plaintiff has not requested that Shaughnessy's estate or personal representative be substituted in his stead, so the complaint against him may be dismissed on this basis alone. In addition, the complaint contains almost no specific information about what either Dill or Shaughnessy did. Nothing is said about Dill, and the only specific allegation concerning Shaughnessy is that he received a copy of a letter Judge Winner sent to the Department of Justice, in which certain allegedly defamatory comments were made about plaintiff. Surely the mere receipt of a letter did not violate anyone's constitutional rights. We conclude that the complaint was properly dismissed as to both Shaughnessy and Dill. They are not alleged to have authorized, approved, or acquiesced in any specific alleged constitutional violations.

■■■■ As to police officers Robert Nicoletti, a Captain, and J.C. Tyus, a Detective, both of the Denver Police Department, the complaint does allege that they were present at the hotel-room meeting, and that Tyus, in particular, offered to give improper and prejudicial testimony that had previously been ruled inadmissible, in order to provoke defendant into moving for a mistrial. Nicoletti is in the same position as the United States Marshals and Spencer. The only specific act of his alleged in the complaint is his mere attendance at the meeting. But a claim has been properly stated against Tyus under 42 U.S.C. § 1983. In addition, the complaint alleges that the City of Denver Police Department had an official policy and plan to repress, vilify, and deny rights to Mexicanos, Amer-

ican Indians, and other "oppressed" national minorities, and that, pursuant to that plan, the Department formulated and issued a "get Martinez" policy and instructions. I R.14, complaint ¶ 32. In furtherance of that policy, we are told, the Department kept a dossier on plaintiff, including reports, recordings, and other materials concerning his views, associations, and meetings. *Id.* ¶ 33. The Department also entered into a campaign to charge plaintiff and harass him and others advocating unpopular causes with unfounded prosecutions and to discourage him and others from asserting their rights. *Id.* at 15, ¶ 36. In or about October 1973, we are told, the Department, because of racial hatred and in order to chill the assertion of rights, obtained a warrant for the false and unfounded arrest of plaintiff, *id.* at ¶ 37, and, in or about November 1973, the Department "determined, in furtherance of its policy ... as aforestated, to issue an order to all Denver Police Officers to 'shoot on sight' plaintiff." *Id.* at ¶ 39.

 We think these allegations are clearly sufficient, as a matter of pleading, to satisfy the "policy" or "custom" requirement of *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Therefore, the City and County of Denver will remain as a defendant. (The "City of Denver Police Department" is not a separate suable entity, and the complaint will be dismissed as to it.) Governmental entities are not entitled to any sort of immunity under § 1983. See *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Individual police officers, like Tyus, have no absolute immunity such as that accorded to judges and prosecutors, but they would be entitled to qualified immunity unless they violated clearly established constitutional rights of which reasonable officers knew or should have known at the time of the alleged acts. Whether qualified immunity will be a defense for Tyus, or for any other named officers who might be brought in by amendment (*cf.* the discussion above with respect to FBI agents) is a question of fact to be explored on remand. It could conceivably be raised and decided on motion for summary judgment, but it is not subject to disposition by motion to dismiss, given the allegations of this complaint. We note, in addition, that Officer Tyus did not actually give the improper and prejudicial testimony that he allegedly offered, and that the mistrial was, in the event, declared for quite different reasons. It may be difficult, therefore, for plaintiff to prove any damages as a result of Officer Tyus's actions, but we think he has a right to try, and, in any event, declaratory or injunctive relief to vindicate plaintiff's constitutional rights might be appropriate.

In sum, as to the state and local defendants, we affirm the dismissal of the complaint with respect to Tooley, Garcia, Shaughnessy, Dill, Nicoletti, and the City of Denver Police Department. The dismissal will be reversed as to the City and County of Denver and Tyus, and plaintiff will have leave on remand to move to amend his complaint to name additional specific officers of the Denver Police Department, in much the same fashion as we have discussed above with respect to so-called "John Doe" agents of the FBI.[8]

## VI.

 The remaining defendant is Peter Webb, a news reporter for television station KMGH–TV who allegedly interviewed Judge Winner and then published "false matter." The "false matter" alleged in the complaint apparently refers to Judge Winner's accusation that Martinez was a cata-

8. We have specifically discussed, as to the state defendants, only the claim under § 1983. We hold, for reasons already discussed in the portion of this opinion dealing with the federal defendants, that the complaint also alleges, as to Tyus and the City and County of Denver, legally sufficient claims under §§ 1981, 1985(3), 1986, and the Fourteenth Amendment. A claim against Tyus is also stated under § 1985(2), clause 1. We affirm the dismissal of the claim asserted under § 1985(2), clause 2 (conspiracy to obstruct the due course of justice in the state courts). The complaint is too vague to state a claim under this last-cited provision.

lyst for terrorist groups, was involved in bombings and riots, and conspired to obstruct justice. The complaint alleges that Webb published this matter with knowledge of its falsity or with reckless disregard for its truth or falsity, and that he did so out of malice. The complaint may be sufficient, despite its failure to set out clearly the substance of what Webb published, to state a claim against him for defamation under the common law of Colorado, but it does not sufficiently allege a claim under the Constitution or laws of the United States. Beyond the bare conclusory allegation that Webb, a private citizen, conspired with the other defendants to deprive plaintiff of his constitutional and civil rights, no facts are stated indicating that Webb did anything other than repeat on the air what Judge Winner had told him. We affirm the dismissal of the complaint as against Peter Webb.

### VII.

We summarize our holdings as follows: the judgment of the District Court dismissing the complaint with prejudice is affirmed in its entirety as to the defendants Fred M. Winner, Joseph M. Dolan, Susan Roberts, John R. Barksdale, Dan Christopher, the United States Department of Justice, the Federal Bureau of Investigation, Matt Dunn, Peyton Baer, Les Weisenhorn, Sandy Spencer, Dale A. Tooley, Castelar Garcia, Jr., the City of Denver Police Department, Arthur Dill, Robert Shaughnessy, Robert Nicoletti, and Peter Webb.

Plaintiff may pursue his claim for declaratory and injunctive relief against the successor of the defendant Joseph M. Dolan as United States Attorney for the District of Colorado. He may also seek leave, on remand, to name specific agents of the Federal Bureau of Investigation and to seek damages, an injunction, and declaratory relief against them.

As to the defendant Jan Chapman, the judgment is reversed and the cause remanded. Plaintiff is free to seek any form of relief (damages, an injunction, or declaratory relief) against her.

As to the City and County of Denver, the judgment is reversed and the cause remanded. On remand, plaintiff may seek any form of relief against this defendant, including damages, an injunction, and a declaratory judgment.

As to the defendant J.C. Tyus, the judgment is reversed insofar as it relates to damages and declaratory relief. Injunctive relief will not be available against this defendant, who is no longer employed by the Denver Police Department.

Each party shall bear his, her, or its own costs on this appeal.

Affirmed in part, reversed and remanded in part with instructions.