**BROWNING DEBENTURE HOLDERS' COMMITTEE et al., Appellants,**

v.

**DASA CORPORATION and Arthur Andersen & Co., Appellees.**

No. 40, Docket 74–2550.

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1975.

Decided Oct. 3, 1975.

Bradley R. Brewer, Brewer & Soeiro, New York City, for appellants.

I. Michael Bayda, New York City (Jacobs, Persinger & Parker, George D. Kappus, New York City, of counsel), for appellee DASA Corp.

Richard W. Lyon, New York City (Breed, Abbott & Morgan, New York City, James D. Zirin, New York City, of counsel), for appellee Arthur Andersen & Co.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The instant appeal involves the scope and substance of § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) [hereinafter § 14(a)],[1] and the Securities and Exchange Commission regulations promulgated pursuant to § 14(a), 17 C.F.R. § 240.14a–1 *et seq.* In addition, we are asked to review the denial by the United States District Court for the Southern District of New York, Thomas P. Griesa, *judge,* of plaintiffs' request for certain pretrial orders pursuant to Rules 16[2] and 56(d) of the Federal Rules of Civil Procedure.

1. Section 14(a) reads in pertinent part:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . .

2. Rule 16 reads as follows:

Pre-Trial Procedure; Formulating Issues

In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider

(1) The simplification of the issues;

(2) The necessity or desirability of amendments to the pleadings;

(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

(4) The limitation of the number of expert witnesses;

(5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;

(6) Such other matters as may aid in the disposition of the action.

The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to non-jury actions or extend it to all actions.

Fed.R.Civ.P. 16, 28 U.S.C.

Rule 56(d) reads as follows:

Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and direct-

For the reasons stated below, we affirm the decision of the district court both to dismiss plaintiffs' claims under § 14(a) and to deny the requested pre-trial orders.

## I. *The Facts*

In 1972, defendant DASA Corporation was confronted with an immediate shortage of working capital. In response to this problem, DASA decided to secure additional working capital by selling its computer equipment for cash. Under the terms of the DASA bondholders' trust indenture, the sale of the computer equipment required approval by the class of bondholders. Since the bonds outstanding were convertible to DASA stock, DASA induced the bondholders to consent to the sale by offering, in return, to reduce the conversion price of their convertible bonds, thereby increasing the value of the bondholders' rights.

Bondholder approval of the sale was thus secured over the objections of a small group of bondholders who felt that the new conversion price offered by DASA was insufficiently favorable to bondholder interests. These dissident bondholders sought a new conversion price even lower than that offered by DASA.

The dissident bondholders organized themselves into the Browning Debenture Holders' Committee [hereinafter Browning]. When the Browning bondholders could not secure a conversion price lower than that offered by DASA, they instituted suit against DASA claiming five violations of federal securities law. Three of the claims, which are not relevant to this appeal, assert violations of bondholder rights. Two of the Browning claims [hereinafter claims one and two] assert violations from the perspective of the DASA stockholders. In particular, the Browning bondholders argue that the proxies for the 1972 DASA annual meeting were solicited fraudulently in violation of § 14(a) of the Securities Exchange Act of 1934 and two SEC regulations promulgated thereunder, SEC Rule 14a–9, 17 C.F.R. § 240.14a–9 and Rule 14a–3(b)(2), 17 C.F.R. § 240.14a–3(b)(2).[3]

---

ing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed.R.Civ.P. 56(d), 28 U.S.C.

3. Rule 14a–9 reads as follows:

(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

(b) The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made.

Rule 14a–3(b)(2) reads as follows:

(b) If the solicitation is made on behalf of the management of the issuer, and relates to an annual meeting of security holders at which directors are to be elected, each proxy statement furnished pursuant to paragraph (a) of this section shall be accompanied or preceded by an annual report to such security holders as follows:

\* \* \* \* \* \*

(2) Any differences, reflected in the financial statements included in the report to security holders, from the principles of consolidation or other accounting principles or practices, or methods of applying accounting principles or practices, applicable to the financial statements of the issuer filed or proposed to be filed with the Commission, which have a material effect on the financial position or results of operations of the issuer, shall be noted and the effect thereof reconciled or explained in such report. Financial statements included in the report may, however, omit such details or employ such condensations as may be deemed suitable by the management: *Provided,* That such statements, considered as a whole in

The Browning group did not assert claims for monetary damages from the conduct of the 1972 DASA shareholders' meeting. The Browning Committee merely sought, in claims one and two, a declaration from the district court that the 1972 meeting had been conducted illegally as a result of the allegedly fraudulent proxy solicitation. District Judge Griesa, at defendant's urging, ruled that claims one and two were mooted by the subsequent shareholder meeting in 1973. The judge therefore dismissed the § 14(a) claims on the ground that, absent a request for monetary damages or injunctive relief, the claims did not pose a justiciable controversy. The plaintiffs, on their own behalf and on behalf of the Browning Committee, appeal to this court.

## II. The § 14(a) Claims [4]

Plaintiffs' claim one asserts that various proxy materials and shareholder reports mailed by DASA in 1972 to its stockholders in connection with its annual meeting were materially false and therefore violative of § 14(a) and the SEC Rule 14a–9 prohibition against misleading proxy solicitations. Claim two asserts with somewhat greater specificity that the DASA annual report discussing 1971 as well as the DASA financial statements covering 1971 were also materially misleading and therefore violative of § 14(a) and SEC Rule 14a–3(b)(2).

The implication of these first two assertions is that the 1972 DASA stockholder meeting was illegal since the proxies used therein were fraudulently solicited in a manner contrary to federal law.

Judge Griesa dismissed these two claims on the ground that the subsequent DASA stockholder meetings in 1973 (and, by implication, 1974) rendered the issue of the 1972 meeting moot. Whatever violations may have occurred in the solicitation of proxies for the 1972 meeting, Judge Griesa held, the officers elected then have fulfilled their terms in office (and subsequently been re-elected in 1973 and 1974). The year 1972, everyone would agree, is over, and it is therefore impossible to enjoin the meeting already held.

Both sides apparently acknowledge that the issue of the 1972 meeting and proxy solicitation materials would not be moot if plaintiffs asserted a claim for monetary damages stemming from the conduct and preparation of the 1972 meeting. Since, however, we cannot enjoin a meeting already held, the Browning group in effect merely seeks declaratory relief (i. e., a declaration that the 1972 meeting was conducted illegally). Judge Griesa therefore held that continuing with the lawsuit (as it pertains to claims one and two) would be an empty exercise resulting, at most, in a judicial declaration of no practical import.

the light of other information contained in the report shall not by such procedure omit any material information necessary to a fair presentation or to make the financial statements not misleading under the circumstances.

4. While reaching the merits of plaintiffs' substantive claims, we note that there is a serious question raised by the record as to whether there has been proper certification of this appeal under Rule 54(b). Fed.R.Civ.P. 54(b), 28 U.S.C. Rule 54(b) applies to a situation such as this where, in a multiclaim suit, one of the parties seeks appellate review of some of the claims while other claims remain with the district court. The rule requires that the district judge in such multiclaim litigation expressly certify that there is "no just reason for delay[ing]" appellate review of those issues disposed of already by the district court. Absent

such a certification, appeal must generally wait until all issues have been resolved by the district court.

The district court in this instance made a certification for appeal, but expressly premised its action on the fact that neither party objected to an immediate appeal of those issues already resolved by the district court. It is apparent, however, that the district court did intend to certify the rulings on counts one and two in this case for immediate review under Rule 54(b) so that the formal omission in the certification is substantially overcome. While we find, accordingly, that compliance with Rule 54(b) is sufficiently established in the record, we suggest that the requisite finding of "no just reason for delay" be expressly set forth in the future to avoid any uncertainty in our administration of this appeals provision.

Appellants contend that claims one and two should be reinstated because of the broad, prophylactic purposes underlying private enforcement of the federal proxy solicitation statutes. In support of its position, the Browning Committee cites the first Supreme Court decision to recognize a private cause of action for damages sustained from a violation of § 14(a), *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The *Borak* Court expressly predicated its holding upon the "broad remedial purposes" of the federal proxy solicitation statute. *Borak, supra* at 431, 84 S.Ct. 1555.

In *Borak,* dissident minority stockholders claimed damages from a merger to which they objected. Since the proxies used to complete the merger were solicited fraudulently, the plaintiffs sued for damages under § 14(a). The Court decided that, by implication, § 14(a) established a private action for damages arising from fraudulent proxy solicitation. Such private enforcement was held necessary to augment enforcement of § 14(a) by the government. Speaking for the Court in *Borak,* Mr. Justice Clark declared: "[I]t is the duty of the courts to be alert to provide such [private] remedies as are necessary to make effective the congressional purpose" of the securities laws. *Borak, supra* at 433, 84 S.Ct. at 1560.

Five years later, in *Mills v. Electric Auto-Lite,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court reiterated its expansive interpretation of the purposes underlying § 14(a) and the scope of private § 14(a) actions. The factual context of *Mills* was essentially the same as *Borak:* dissident shareholders sought monetary damages for a merger consummated with proxies allegedly solicited in a false and fraudulent manner. Both the trial court and Court of Appeals held that, to be successful, the plaintiffs' damage action required separate proof that the fraudulent representations had resulted in the merger. In other words, the lower courts in *Mills* had decided that a necessary element of a private § 14(a) claim is proof that the shareholders in fact yielded their proxies to management in reliance on management's misrepresentations.

The Supreme Court disagreed, holding that the broad, prophylactic purposes of § 14(a) would be frustrated if plaintiffs were required to prove such specific reliance. If a misrepresentation or omission is material, the Court held, a cause of action is stated: "Use of a solicitation that is materially misleading is itself a violation of law." *Mills, supra* at 383, 90 S.Ct. at 7. Requiring additional proof of reliance would discourage plaintiffs, the Court reasoned, whereas the goal of § 14(a) is to encourage private enforcement.

Finally, plaintiffs point to the recent Second Circuit decision in *Schlick v. Penn-Dixie,* 507 F.2d 374 (2d Cir. 1974), *petition for cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). In *Schlick,* as in *Borak* and *Mills,* minority shareholders challenged a merger on the ground that the proxy solicitations were fraudulently obtained in violation of § 14(a). However, in *Schlick,* unlike *Borak* and *Mills,* the defendant/majority stockholder owned sufficient shares to approve the merger without a single minority vote. The trial court held that, under those circumstances, there was no § 14(a) cause of action since the fraudulent proxy solicitation did not affect the merger: the majority stockholder had the votes anyway.

This court, on the authority of *Borak* and *Mills,* reversed. Fraudulent solicitation of proxies, even when those proxies were unnecessary to obtain the requisite majority, states a § 14(a) claim in the context of a challenged merger. Otherwise, the court said, the broad remedial purposes of the 1934 Act would be frustrated whenever a majority shareholder had sufficient votes to control the corporation. In effect, § 14(a) would be a dead-letter, the fraudulent proxies permitted, whenever the majority stockholder has sufficient votes of his own to control the corporation.

Thus, plaintiffs of the Browning group assert, the scope of a permissible § 14(a) action is to be interpreted broadly to effectuate Congressional intent and private enforcement. Any private action which enforces the law is to be allowed, notwithstanding "mootness" in the conventional sense of the term.

▆▆▆ While we agree with plaintiffs that § 14(a) is to be construed broadly in accordance with the Congressional intent to establish private policing of the securities market, we do not agree that such a construction compels acceptance of plaintiffs' claims one and two. In each case cited above, a claim of monetary damage was critical to establishing a cause of action under § 14(a). Indeed, we specifically said in *Schlick* that "in order to state a Section 14(a) claim," plaintiffs must "show damages." *Schlick, supra* at 382. Since plaintiffs in the instant case do not assert such damages in their first two claims the teaching of *Schlick, Borak* and *Mills* is that plaintiffs have failed to state a cause of action under § 14(a).

Indeed, the plaintiffs seem to have misread our holding in *Schlick*. So far as applicable here, the *Schlick* court only held that, as a matter of law, a corporate decision is "caused" by a materially fraudulent proxy solicitation even if the defendant/majority stockholder possesses sufficient votes to make the decision himself. To interpret this holding as indicating that economic damages are not necessary for a § 14(a) claim is to read into the opinion something which is not there.

▆▆▆ Nevertheless, plaintiff bondholders seek to justify claims one and two as enforcement of § 14(a). The obvious problem with this rationale is that plaintiffs, if successful, would not enforce anything. Unlike damages and injunctive relief, which apply significant sanctions and thereby deter future conduct, a declaratory judgment has no practical effect except as it lays the basis for future relief of a more coercive nature. The plaintiffs in the instant action are inconsistent in justifying their actions as private "enforcement" while at the same time seeking only declaratory relief which has no enforcing effect upon any of the parties. Enforcement is designed to compel behavior to conform with legal strictures. Plaintiffs' claims one and two, if successful, would not change anyone's behavior. How this would "enforce" the policies of § 14(a) is a mystery we cannot fathom. No one's behavior will be affected (or enforced) by a mere declaratory judgment under the circumstances here.

It is well to recall Justice Clark's exact words in *Borak:* private § 14(a) actions should be authorized when they "*make effective* the congressional purpose" of the securities laws. (Emphasis added.) Under this test, the first two Browning claims should fail since, as a practical matter, they will not effect anything.

Plaintiffs paint a dismal future for § 14(a) suits if Judge Griesa is upheld on the mootness issue.

We believe that plaintiffs' position is overstated. First, we hold only that on the facts of this case claims one and two are moot and have no apparent enforcement value for § 14(a). There may (arguably) be cases when declaratory judgment, by itself, will have an enforcement effect upon future behavior. When the behavior complained of is of such a nature that it might predictably be repeated again (for example, a pyramidal sales scheme), a prior declaratory judgment may serve the useful purpose of facilitating an injunction at a future date. However, that is not the situation here: DASA has already sold its computer equipment. There is no danger of a second transaction such as that which triggered this controversy for the simple reason that DASA has no computer equipment left to sell.

Secondly, plaintiffs in their brief exaggerate the danger that annual meetings might be enjoined indefinitely in response to § 14(a) suits in order to avoid the mootness problem in future litigation. Such an argument assumes that the courts are unable to fashion equitable remedies in a manner which pre-

serves plaintiffs' prerogatives without unduly damaging defendant corporations. Since temporary and preliminary injunctions are, by definition, discretionary, federal judges do have sufficient authority to prevent the horrendous consequences predicted by plaintiff Browning.

Thirdly, it would appear from the increasing volume of § 14(a) suits that the possibility of damage awards is more than sufficient to stimulate necessary levels of private enforcement. (Indeed, it is unquestionably the damage-related claims (three, four and five) which are the fundamental motivation of the Browning suit.) We can feel reasonably secure that the possibilities of damages and injunctive relief will suffice to ensure private enforcement even if Browning claims one and two are dismissed.

■■■ There are few principles as firmly and as deeply embedded in our jurisprudence as the proposition that federal courts will not issue opinions unless a valid and continuing controversy exists between the litigants. *See, e. g., North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). When, as here, an issue is rendered moot by plaintiffs' failure to specify monetary damages or other operative relief, and the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.

Accordingly, the dismissal of plaintiffs' first two claims as moot is affirmed.

### III. *The Pretrial Orders*

Also before us in the instant appeal is the claim of the plaintiffs that Judge Griesa improperly refused to grant certain procedural requests below. In particular, the Browning group moved the district court to compel certain pre-trial discovery proceedings and their recording on tape, purportedly pursuant to Rules 16 and 56(d) of the Federal Rules of Civil Procedure. These motions were denied by the district court, and the plaintiffs now ask this court to reverse.

■■■ We do not reach the substance of the plaintiffs' position because the district court's disposition of these pretrial motions is not subject to appellate review at the present time. Such review is precluded by the long-standing rule that, generally speaking, only the "final decisions" of district courts are appealable. *See* 28 U.S.C. § 1291. Since motions for discovery are of an interlocutory, rather than a final, nature, they may not be reviewed by this court until the entire proceeding before the district court is concluded.[5] In the instant case, the plaintiffs' lawsuit remains very much alive as claims three, four and five asserting bondholder rights have yet to be adjudicated by the district court.[6] Accordingly, it is inappropriate for us to review these procedural decisions at the present time.

■■ Plaintiffs argue that these pretrial procedural decisions are nevertheless appealable under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We disagree. In *Cohen,* the Supreme Court held that a small class of interlocutory orders are appealable when they present issues which are of great importance and which are collateral to the main lawsuit before the district court. Plaintiffs' pretrial motions do not, in our judgment, fall within this

---

5. There are certain interlocutory orders which are appealable under 28 U.S.C. § 1292. However, plaintiffs' requests for pretrial discovery and stipulations do not fall within the purview of these provisions. A denial of discovery that goes to the establishment of jurisdictional facts may be reviewable by mandamus. *Investment Properties International, Ltd. v. IOS, Ltd.,* 459 F.2d 705 (2d Cir. 1972). *But see Fitzgerald v. Texaco, Inc.,* 521 F.2d 448 (2d Cir. 1975).

6. Since we have written this opinion, the district court has dismissed claims four and five and has conducted a trial on the merits of claim three. Since a final order has not been entered with respect to claim three, the judge's pretrial procedural decisions remain interlocutory and therefore unappealable.

**818**

class. While plaintiffs of the Browning group are understandably concerned about the time and money they seek to save through pretrial discovery under their proposed methods, we do not believe that their motions present a sufficiently compelling question to justify piecemeal appellate review. *See, American Express Warehousing, Ltd. v. Transamerican Insurance Co.*, 380 F.2d 277, 280 (2d Cir. 1967).

Accordingly, we dismiss the appeal from the pretrial orders of the district court.