887 P.2d 1262

Neal **JOHNSON**, Plaintiff–Appellant,

v.

Joe **LALLY**, an Assistant District Attorney for the Second Judicial District, Defendant–Appellee.

No. 14960.

Court of Appeals of New Mexico.

Oct. 12, 1994.

Phillip P. Baca, Kenneth R. Wagner & Associates, Albuquerque, for plaintiff-appellant.

Tom Udall, Atty. Gen., Joan M. Waters, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

BOSSON, Judge.

■ Plaintiff sues under 42 U.S.C. Section 1983 (1988) (Civil Rights Act), for violation of his civil rights by Defendant, an assistant district attorney, who allegedly initiated criminal proceedings against him maliciously and without cause. Because of absolute prosecutorial immunity, Defendant cannot be sued for monetary damages. *See Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Instead, Plaintiff seeks a declaratory judgment, which is not precluded by prosecutorial immunity, declaring that his civil rights were violated by Defendant's past conduct. *See Supreme Court of Va. v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 736–37, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980); *Figueroa v. Clark,* 810 F.Supp. 613, 615 (E.D.Pa.1992). The question before us on appeal is whether a declaratory judgment is an appropriate remedy solely to vindicate past grievances, when that judgment would have no significant, practical effect or purpose with regard to any future conduct of the parties. Under these circumstances the district court declined to issue declaratory relief, and on appeal, we affirm.

### FACTS

Plaintiff, a pharmacist, is the owner of Clinical Pharmacy in Albuquerque. In September 1988, he reported to the Board of Pharmacy (Board) that patrons were soliciting forged prescriptions. An investigator for the Board initiated a full investigation. Plaintiff fully cooperated; he reported any suspicious prescriptions, and from a photo array identified individuals who presented forged prescriptions. As a result, several suspects were apprehended.

Once the investigation was completed, the same investigator filed a criminal complaint against Plaintiff accusing him of unlawfully filling forged prescriptions. Defendant presented the case against Plaintiff to the grand jury. Plaintiff was ultimately indicted. The state eventually dismissed the case against Plaintiff, after the district court suppressed documents illegally obtained from Plaintiff's pharmacy. Plaintiff then filed this Section 1983 action against Defendant seeking only declaratory relief and against the Board investigator seeking money damages. The action against the investigator is pending in district court and is not part of this appeal.

■ In his complaint, Plaintiff asserts that Defendant, as prosecutor, deliberately and intentionally withheld exculpatory evidence from the grand jury, including the fact of Plaintiff's own extensive cooperation with the investigation. Plaintiff further claims Defendant knew that the grand jury was receiving perjured testimony from the Board investigator. Because we are reviewing a motion to dismiss, we assume the truth of the allegations against Defendant, and that those allegations constitute a viable claim under the Civil Rights Act. *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.,* 106 N.M. 757, 760, 750 P.2d 118, 121 (1988). We focus on the relief requested and whether Plaintiff is entitled to a declaratory judgment under widely accepted standards for that remedy.

### DISCUSSION

In a similar situation, this Court recently held in *Yount v. Millington,* 117 N.M. 95, 869 P.2d 283 (Ct.App.1993), *cert. denied,* 117 N.M. 121, 869 P.2d 820 (1994), that declaratory relief, even for past constitutional violations, was *not* appropriate absent the likelihood of continuing, unconstitutional activity. In other words, a declaratory judgment will not issue to interpret the legality of a one-time occurrence, not likely to be repeated. Our holding in *Yount* could easily be applied to defeat Plaintiff's claim for declaratory relief, since there is no provable likelihood that Defendant would ever again prosecute Plaintiff on these or any other charges. However, the propriety of declaratory judgment was only one of several issues raised in *Yount,* and therefore, the discussion was necessarily abbreviated. We are not satisfied that *Yount* fully answers the issue posed in this case, and therefore, we take this opportunity to explain why, in light of its history and purpose, a declaratory judgment is not an appropriate remedy to address the kinds of wrongs alleged here, even when they may rise to the level of constitutional violations by a trusted public official.

■ The Federal Declaratory Judgment Act, 28 U.S.C. Section 2201 (1982), in language nearly identical to the New Mexico Declaratory Judgment Act, NMSA 1978, Section 44–6–2, requires an "actual controversy" between the parties: "In a case of actual controversy within its jurisdiction ... any court ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." In an effort to avoid the "actual controversy" requirement of these acts, Plaintiff asserts, without authority, that his declaratory action need not be brought pursuant to the federal or the state declaratory judgment acts but instead can be based on Section 1983 alone. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues unsupported by cited authority do not need to be considered on appeal). We believe Plaintiff is mistaken. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, *suit in equity, or other proper proceeding for redress.* For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(Emphasis added.) Unlike Plaintiff, we do not interpret this language to authorize a declaratory judgment or any other, particular relief. The statute simply allows a "suit in equity" to redress the alleged deprivation; it does not create the different types of suits in equity which may be brought.

There is not a case specifically on point, but if Section 1983 were itself an independent source for declaratory judgment, then the Federal Declaratory Judgment Act would be rendered largely redundant, at least for suits involving state action. Support is drawn from the many courts that have struggled to emphasize the independent role of the Federal Declaratory Judgment Act in Section 1983 actions and the "different considerations" that enter, for example, into issuing injunctive relief under equitable powers, as opposed to declaratory relief under 28 U.S.C. Sections 2201, 2202 (1982). *Roe v. Wade,* 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973); *see Perez v. Ledesma,* 401 U.S. 82, 93–130, 91 S.Ct. 674, 681–700, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part, dissenting in part); *Zwickler v. Koota,* 389 U.S. 241, 245–47, 252–55, 88 S.Ct. 391, 394–95, 398–99, 19 L.Ed.2d 444 (1967). Furthermore, the Federal Declaratory Judgment Act was created decades after the post-civil war Civil Rights Act specifically to provide "an alternative to the strong medicine of the injunction." *Steffel v. Thompson,* 415 U.S. 452, 466, 94 S.Ct. 1209, 1219, 39 L.Ed.2d 505 (1974). Therefore, just as a declaratory judgment was not available historically for civil rights actions until the subsequent enactment of the Federal Declaratory Judgment Act, it is equally unavailing to Plaintiff today without satisfying the requirements of the federal Act.

■ It is also clear that a Section 1983 action brought in state court is subject to federal remedies in order to promote uniformity and to protect federally created interests. *See* Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 4.03, at 275 (3d ed. 1991). Likewise, the standards governing the issuance of a declaratory judgment in a Section 1983 claim are best interpreted in a consistent manner. Therefore, our duty is to enforce Section 1983 by applying the "actual controversy" requirement of the Federal Declaratory Judgment Act in a manner consistent with other courts.

■ Plaintiff argues vigorously that an "actual controversy" does exist respecting the legality of Defendant's past conduct, regardless of whether that conduct may be repeated. According to his complaint, Plaintiff's constitutional rights were violated by prosecutorial abuse resulting in injuries to his reputation, a consequence of Defendant's actions, which, unlike *Yount,* continue to this day. Plaintiff is adamant that he deserves a declaratory judgment to show the world that

he was unjustly accused, and thereby clear his name. Defendant's denial of these allegations would seem to create a "controversy" of some weight, which arguably could be settled by a declaration of whether or not Plaintiff was prosecuted unjustly. To Plaintiff, the controversy is all the more live and "actual," because all the operative facts have already occurred leaving nothing to speculation or conjecture. Plaintiff cites to Professor Wright for authority:

> There is little difficulty in finding an actual controversy if all of the acts that are alleged to create liability already have occurred. The court is then merely asked, as in any litigation, to determine the legal consequences of past events and it is immaterial that it may be the one allegedly liable, rather than the person to whom he would be liable, who asks for the judicial declaration.

10A Charles A. Wright Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2757 (2d ed. 1983).

Plaintiff may have a point. On the surface, this quotation from Professor Wright would appear to contradict our holding in *Yount*, that a declaratory judgment cannot be utilized solely to declare past events unconstitutional. Therefore, we must directly face the issue of whether a declaratory judgment can ever issue when "all of the acts that are alleged to create liability already have occurred," and, if so, under what circumstances.

■ Under the great weight of the case law, it is clear that past wrongs, even unconstitutional wrongs, do not create a foundation for declaratory relief without either continuing illegal actions or continuing consequences to Plaintiff. *See generally* Edwin Borchard, *Declaratory Judgments* 33–38 (2d ed. 1941); 6A James Wm. Moore et al., *Moore's Federal Practice* ¶¶ 57.11, 57.13 (2d ed. 1993). Defendant offers several recent federal cases, involving facts similar to this case, to illustrate the point.

In *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448 (10th Cir.1990), the plaintiff sued under the Civil Rights Act, alleging an unconstitutional revocation of his parole. He sought to join a state judge as one of the defendants, requesting only declaratory relief because, like Defendant here, a judge has absolute immunity from damages. *Id.* at 1451. Since there was no realistic probability of the plaintiff again experiencing parole revocation proceedings in front of these officials, the court denied his claim for declaratory relief, holding that it must "look beyond the initial 'controversy' which may have existed at one time" and decide whether " 'there is a substantial controversy ... of sufficient *immediacy and reality* to warrant the issuance of a declaratory judgment.' " *Id.* at 1452 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (emphasis added)). The court continued, that even if the plaintiff "has suffered uncompensated damage as the result [of] any impropriety in the revocation proceedings; such declaratory relief would in no way redress those past injuries." *Id.* at 1452 n. 3. The court concluded that it was improper to issue declaratory relief "merely as 'guidance' " to the defendant in the absence of an actual and continuing controversy. *Id.* at 1453 n. 4.

Similarly, in *Boston v. Lafayette County, Miss.*, 744 F.Supp. 746 (N.D.Miss.1990), *aff'd*, 933 F.2d 1003 (5th Cir.1991), the plaintiff's sister died after a 48 hour detainment in the county jail pending involuntary commitment proceedings. Because damages were precluded by absolute and qualified immunity, the plaintiff sought a declaratory judgment that the detainment deprived her sister of due process of law. *Id.* at 750. The court held that without any " 'substantial continuing controversy' " it would be improper to grant declaratory relief. *Id.* at 755 (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985)).

> [D]eclaratory relief in this instance would only serve to answer a hypothetical question of constitutional law, assuming a potential for future harm and that the doctrines barring recovery for damages did not apply. While a declaratory judgment in the plaintiff's favor might help ease the emotional loss suffered by the plaintiff as a result of [her sister's] death, due to the preclusion of damages and no risk of future harm, it " 'would [be] nothing more

than a gratuitous comment without any force or effect.'"

*Id.* at 756 (quoting *Emory,* 756 F.2d at 1552 (citations omitted)). Other cases have held in a similar fashion. *See, e.g., Golden v. Zwickler,* 394 U.S. 103, 103, 89 S.Ct. 956, 956, 22 L.Ed.2d 113 (1969) (declaratory judgment against unconstitutional election statute improper where the plaintiff left office and not likely to run again); *Society of Separationists, Inc. v. Herman,* 959 F.2d 1283, 1285 (5th Cir.1992) (en banc) ("To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."), *cert. denied,* —— U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 135 (1992); *Northern Va. Women's Medical Ctr. v. Balch,* 617 F.2d 1045, 1049 (4th Cir.1980) (declaratory judgment denied against a state judge who had enforced unconstitutional abortion statutes because, absent threat of retrial, a declaration "would have been nothing more than a gratuitous comment without any force or effect."); *Browning Debenture Holders' Comm. v. DASA Corp.,* 524 F.2d 811, 814 (2d Cir.1975) (where securities lawsuit challenging stockholders meeting superseded by subsequent meetings, declaratory relief was improper because it "would be an empty exercise resulting, at most, in a judicial declaration of no practical import").

On the other hand, the cases offered by Plaintiff are not persuasive. For example, Plaintiff relies heavily on the Tenth Circuit's decision in *Martinez v. Winner,* 771 F.2d 424 (10th Cir.1985). There, the plaintiff initially obtained a declaratory judgment that federal prosecutors, who are otherwise immune from suit for monetary damages, had violated his civil rights by subjecting him to unlawful arrest and prosecutions, because declaratory relief "might serve the important purpose of vindicating [the] plaintiff's constitutional rights." *Id.* at 439. *Martinez,* however, was subsequently modified by the Tenth Circuit, 778 F.2d 553 (10th Cir.1985), vacated by the United States Supreme Court in *Tyus v. Martinez,* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986), and, on remand, vacated as moot by the Tenth Circuit, 800 F.2d 230 (10th Cir.1986). Being subsequently vacated by both the United States Supreme Court

and the Tenth Circuit, *Martinez* has very little precedential value. Furthermore, there was a clear indication in *Martinez* that the police continued to threaten the plaintiff, which, if true, would justify a declaratory judgment even under the traditional standard of continuing illegal conduct. *Martinez,* 771 F.2d at 439.

Plaintiff also relies upon a single quote from the United States Supreme Court in *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983), that an "actual controversy" exists if a plaintiff has "*'sustained* or is immediately in danger of sustaining some direct injury.'" (Emphasis added). Plaintiff's reliance on the past tense is belied by the clear language and holding of the case that past exposure to illegal conduct does not alone present a "case or controversy," unless there is a sufficient likelihood that the victim will again be wronged in a similar way. *Id.* at 111, 103 S.Ct. at 1670.

■ Based on the foregoing, we conclude that the cases are "legion" holding that declaratory relief is simply not available to clarify or declare past conduct, without something more. *See Herman,* 959 F.2d at 1286. However, we also believe that the fact of a one-time occurrence does not always preclude a declaratory judgment, despite the impression to that effect in *Yount.* The presence of continuing consequences from a past event may be decisive in favor of declaratory judgment. *See Salomon Bros. v. Carey,* 556 F.Supp. 499 (S.D.N.Y.1983) (declaratory judgment regarding the legality of a past shareholders meeting in order to preempt the continuing threat of a securities lawsuit); *Bruhn v. STP Corp.,* 312 F.Supp. 903 (D.Colo.1970) (declaratory judgment over alleged breach of covenant not to compete; continuing consequences of past acts).

This interpretation appears essential to understanding the paragraph previously quoted from Professor Wright, approving declaratory judgment when the acts "that are alleged to create liability already have occurred," because "[t]he court is then merely asked, as in any litigation, to determine the *legal consequences* of past events." Wright, Miller &

Kane, *supra*, § 2757 (emphasis added). Our focus, therefore, is not solely whether the wrongful acts themselves are likely to be repeated, but also, whether Defendant's past acts continue to have "legal consequences," suitable for declaratory resolution. This interpretation is consistent with the history and purpose of the declaratory judgment as it has emerged from the beginning of this century, so that parties can adjust their future conduct in reliance on a judicial interpretation and thereby mitigate attendant risks. *See generally* Wright, Miller & Kane, *supra*, §§ 2751, 2752; 6A Moore et al., *supra*, ¶¶ 57.05, 57.11. As stated in Dan B. Dobbs, *Law of Remedies* § 12.8(7) (1993),

[t]he declaratory judgment gives the parties a judicial determination of a disputed legal issue, so that they may act on a certain knowledge of the legal rules as applied to the controversy at hand. This tool permits parties to minimize risk of loss that might occur if they are forced to make choices and take actions in legal darkness.

■ This is the pragmatic, realistic side of a declaratory judgment. If it does not serve a constructive purpose in guiding the future conduct of the parties, declaratory judgment should probably not issue. *See* Moore et al., *supra*, ¶ 57.05 ("The uniqueness of the declaratory remedy lies rather in its potential, prophylactic character...."); Borchard, *supra*, at 307 ("[T]he declaration is an instrument of practical relief and will not be issued where it does not serve a useful purpose...."); *see also DASA Corp.*, 524 F.2d at 816 ("Unlike damages and injunctive relief, which apply significant sanctions and thereby deter conduct, a declaratory judgment has no practical effect except as it lays the basis for future relief of a more coercive nature.").

■ In our view, the lack of any "useful purpose" or "practical effect" is the essence of why declaratory judgment was inappropriate in *Yount*, and why it is equally unavailing to Plaintiff in this case. Plaintiff seeks a declaratory judgment primarily, if not exclusively, to adjudicate who was right and wrong in regard to his prosecution; he seeks a kind of moral vindication. Plaintiff undoubtedly feels a compelling need, and perhaps deserves such vindication in a moralistic sense. Certainly, vindication can be a by-product of a successful suit for money damages. Here, that avenue is frustrated by immunity. But the fact of immunity should not make declaratory relief any easier; it is a neutral fact, and declaratory judgment must stand or fall on its own merit. Vindication alone is not the kind of constructive, "useful purpose" for which the declaratory judgment was created, and as best we can tell, no court has ever issued a declaratory judgment on that basis.

■ Further, while we appreciate Plaintiff's allegations of continuing injury to his reputation from wrongful criminal charges, injury to reputation, standing alone, does not constitute the kind of continuing consequence necessary to justify a declaratory judgment under Section 1983. *Cf. Emory*, 756 F.2d at 1554 (damage to reputation, alone, does not state a deprivation of a liberty or property interest under the constitution sufficient to create an action under Section 1983); *Smith v. Turner*, 764 F.Supp. 632, 640 (N.D.Ga. 1991) (same). Furthermore, any declaration regarding reputation alone would essentially amount to the same kind of "gratuitous comment" or mere "guidance" with respect to who was right and wrong because reputation is often an incidental hostage to the underlying dispute. If we were to recognize a declaratory judgment for injury to reputation, we fear the exception would likely swallow the general rule discouraging declaratory relief in such circumstances.

■ Finally, Plaintiff emphasizes that because of prosecutorial immunity, if a declaratory judgment will not lie, then this prosecutor will never be held accountable for his alleged unconstitutional acts. While this may be true, " 'it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' " *Imbler v. Pachtman*, 424 U.S. 409, 428, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94

L.Ed. 1363 (1950)). Not every wrong has a remedy, even when committed by an official impressed with the public trust. Immunity allows prosecutors the freedom of independent judgment without fear of vindictive litigation and liability for money damages, and it ensures that time is spent on designated responsibilities, rather than defending unfounded claims. *Id.* at 422–24, 96 S.Ct. at 991–92. These reasons are equally compelling in this action. While a declaratory judgment may not, on its face, require the payment of money, a Section 1983 claim brings with it the potential award of attorney fees. *See* 42 U.S.C. § 1988 (1982). That threat, combined with the necessity of preparing a defense, would, we believe, seriously undermine the policy considerations behind immunity. One court faced with a very similar situation commented that

> [i]ssuing a declaratory judgment would support an award of attorney's fees against [the judge] under § 1988. This is an 'end run' around a defendant's immunity. It is appropriate that we recognize that reality in determining whether declaratory relief is warranted. We should be hesitant to inhibit state judges from exercising the discretion that comes with their job by imposing costs solely to protect against a hypothetical risk of future harm. The practical concerns, combined with concerns of equity, comity, and federalism, tip the balance decisively in favor of restraint.

*Herman,* 959 F.2d at 1287 (citations omitted); *see also Yount,* 117 N.M. at 103–04, 869 P.2d at 291–92.

Even where declaratory judgment is authorized, its issuance is nonetheless discretionary with the trial court. "The Declaratory Judgment Act was an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962) (per curiam). The facts and circumstances which support or oppose declaratory relief have countless variations, and therefore we are reluctant to announce a hard and fast rule for every foreseeable combination or circumstance. However, we have no hesitation in affirming the court below in denying declaratory relief based upon this record and the reasons offered by Plaintiff.

For the foregoing reasons, the decision of the trial court is affirmed.

**IT IS SO ORDERED.**

APODACA and FLORES, JJ., concur.